David A. ROWELL et al.

v.

JONES & VINING, INC.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1986.
Decided April 27, 1987.

Stephen P. Beale (orally) Skelton, Taintor, Abbott & Orestis, Lewiston, for plaintiffs.

Jeffrey T. Shedd (orally) Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

GLASSMAN, Justice.

The plaintiffs sued for vacation pay allegedly earned while employed by defendant, Jones & Vining, Inc. They now appeal from the summary judgment for the defendant entered by the Superior Court, Androscoggin County. For the reasons hereinafter set forth, we affirm the judgment.

The parties stipulated, *inter alia*, to the following facts: The plaintiffs were full-time hourly nonunion employees who worked in the defendant's shoe mold shop in Lewiston. On December 16, 1983, as a result of the substantial termination of its mold shop operation, Jones & Vining terminated the employment of all the plaintiffs except Lawrence W. Holbrook and Raymond A. Forgues. Plaintiff Forgues voluntarily resigned on January 20, 1984. Plaintiff Holbrook voluntarily resigned on April 14, 1984.

As a term of employment of their employees Jones & Vining maintained a written Employment Policy and Procedural Manual that included a vacation plan. Revisions of the vacation plan went into effect on January 1, 1984. The significant portion of the plan applicable to full-time hourly nonunion employees is as follows:

Eligibility

(a) Full time employees are eligible for paid vacation time under this Policy.

(b) Part time, Temporary, Casual Employees and employees on leave of absence will not be eligible for paid vacation.

(c) Employees must be working on a full time basis on June 15th of each year to be eligible for vacation pay.

(d) Only full time employment is considered in calculating vacation time. When continuous service consists of periods of full time and part time employment the periods of full time employment will be combined to determine vacation eligibility.

(e) June 15th of each year will be the date used to calculate service eligibility for paid vacation time in accordance with the following schedule:

| Service | Vacation |
| --- | --- |
| First two years of employment | 1 day for each 10 weeks of service up to 1 year plus 1 day for each additional 10 weeks up to 2 years. |
| 2 full years of service | 2 weeks |
| 10 full years of service | 3 weeks |
| 20 full years of service | 4 weeks [1] |

As of the date of each plaintiff's termination, each had been paid in full the entire vacation pay to which he was entitled attributable to employment through June 15, 1983. No plaintiff has been paid any vacation pay for any period subsequent to June 15, 1983, despite a demand by each plaintiff for vacation pay prorated for that part of a 12–month period from June 16, 1983 to his respective termination date. The plaintiffs brought an action against the defendant under the provisions of 26 M.R.S.A. §§ 626 and 626–A for vacation pay accrued and payable, and costs of suit including attorney's fees and interest.

Both parties filed a motion for a summary judgment based on the stipulated facts that included the pertinent portions of the original and revised vacation plans. The Superior Court denied the plaintiffs' motion for summary judgment and entered summary judgment for Jones & Vining. In rejecting the plaintiffs' argument that 26 M.R.S.A. § 626 (Pamph.1986) entitled them to vacation pay, the court determined that section 626 is a remedial statute applicable "only if vacation pay has been earned pursuant to the private terms and conditions of employment." Further, the court held that because the vacation plan states that employees "must be working on a full time basis on June 15th of each year to be eligible for vacation pay," there was "no reason not to give effect to these plain words," and, accordingly, denied the plaintiffs any vacation pay after June, 1983.

The plaintiffs advance two arguments on appeal. First, the plaintiffs maintain that 26 M.R.S.A. § 626 entitles them to prorated vacation pay corresponding to the periods they worked. Second, they assert that the vacation plan cannot be interpreted to divest the plaintiffs of benefits earned under the plan.

■ We first address the plaintiffs' assertion that 26 M.R.S.A. § 626 entitles them to a prorated share of their paid vacation despite any terms of the defendant's vacation policy. Section 626 provides:

Cessation of employment. Any employee leaving his or her employment shall be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid; provided that any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by said employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment shall have the same status as wages earned....

26 M.R.S.A. § 626 (Pamph.1986). The plaintiffs urge that by equating vacation pay with wages earned, section 626 requires payment of a prorated share of vacation time at the cessation of employment, regardless of any restrictive provisions in the vacation policy.

On the contrary, the conditions for earning vacation and the amount of vacation earned are governed by the terms of employment, not by the statute. The statute refers to "the terms of employment" because an employee has no right to a paid

---

1. The revised plan did not differ significantly. Beginning in 1984, June 1 is the date used to calculate eligibility, and employees begin to earn three and four week vacations each year after 8 and 15 years of service, respectively.

vacation except as provided by the terms of his employment. *See G.H. Bass and Co. v. Maine Employment Security Commission,* 250 A.2d 492 (Me.1969); 26 M.R.S.A. § 626. Section 626 simply declares that if by the terms of employment an employee at the time of termination of employment is entitled to paid vacation time, payment for that time has the same status as unpaid wages. This interpretation does not render section 626 without meaning. The remaining paragraphs of that section and section 626–A provide the enforcement procedure and penalties against employers who do not pay. *See* 26 M.R.S.A. §§ 626 & 626–A (Pamph.1986). We agree with the holding of the Superior Court that the plaintiffs' only rights to vacation pay must derive from the Jones & Vining vacation plan set forth in their Employment Policy and Procedural Manual as a term of their employment.

We next turn to the plaintiffs' second argument that because earned vacation pay has the status of wages, rather than a gratuity, the vacation plan cannot be interpreted to "divest" plaintiffs of earned vacation benefits. We disagree.

■ Plaintiffs rely on several decisions in other jurisdictions awarding prorated vacation benefits despite nonfulfillment of an eligibility date requirement. *See, e.g., Suastez v. Plastic Dress-Up Co.,* 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122, 126 (1982); *Livestock Feeds, Inc. v. Local Union No. 1634,* 221 Miss. 492, 73 So.2d 128, 132 (1954). The rationale of these cases is that the right to vacation compensation vests as services are performed. We decline to adopt that formulation in the face of a clear contract to the contrary. An employer is free to set the terms and conditions of employment and compensation and the employee is free to accept or reject those conditions. We see no reason why an employer may not condition the vesting of a benefit right on some event or act in addition to the performance of services, such as continued employment until a given date. *See Buchholtz v. Swift & Co.,* 609 F.2d 317, 323–27 (8th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672,

62 L.Ed.2d 648 (1980); *Treloar v. Steggeman,* 333 Mich. 166, 170, 52 N.W.2d 647, 649 (1952); *State ex rel. Roberts v. Public Finance Co.,* 294 Or. 713, 716–17, 662 P.2d 330, 332 (1983).

■ This contract of employment was for an indefinite length of time and therefore, in the absence of an express agreement to the contrary, the contract was terminable at will by either party under the common law. *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97, 99 (Me.1984); *Blaisdell v. Lewis,* 32 Me. 515, 516 (1851); *see also Broussard v. CACI, Inc.-Federal,* 780 F.2d 162, 163 (1st Cir.1986) (applying Maine law). Jones & Vining had the right to discharge its employees at any time and incurred no liability for the simple act of discharge. In the absence of provisions to the contrary, an employment contract "does not imply an undertaking of the employer to stay in business and to continue operations or to furnish any minimum amount of employment, or indeed any employment at all." *Karcz v. Luther Mfg. Co.,* 338 Mass. 313, 319, 155 N.E.2d 441, 445 (1959); *see also Treloar v. Steggeman,* 333 Mich. 166, 169–70, 52 N.W.2d 647, 649 (1952).

According to the plain language of the vacation plan in the employment policy manual, employment "on a full time basis on June 15th of each year" is a condition precedent "to be[ing] eligible for vacation pay." Since the employees were rightfully discharged or voluntarily quit before that date, they are ineligible for vacation pay. The Superior Court therefore construed and applied the contract correctly.

The entry is:

Judgment affirmed.

All concurring.